**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA
OMAHA DIVISION**

| | |
|---|---|
| MARY KATE GULICK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 8:24-CV-00141-RFR-JMD |
| CARSON GROUP HOLDINGS, LLC, | ) ) |
| Defendant. | ) ) |

## **DEFENDANT'S MOTION TO STAY PROCEEDINGS**

Defendant Carson Group Holdings, LLC ("Defendant" or "Carson Group") respectfully requests the Court stay all proceedings in this case and deadlines set forth in the Court's Final Progression Order (Amended) (Doc. 44) pending the Court's resolution of the serious issues arising from Plaintiff Mary Kate Gulick's ("Plaintiff") intentional alteration of numerous medical records. In support of its Motion, Carson Group states as follows:

1. On March 20, 2024, Plaintiff filed her original Complaint and Jury Demand in the District Court of Douglas County.

2. On April 19, 2024, Carson Group timely removed the case to this Court. (Doc. 1).

3. On May 9, 2024, Plaintiff filed her Amended Complaint, asserting claims for Sex Discrimination under the Nebraska Fair Employment Practice Act ("NFEPA") and Title VII of the Civil Rights Act of 1964 ("Title VII"), Retaliation under the NFEPA and Title VII, and Disability Discrimination under the NFEPA and Americans with Disabilities Act ("ADA"). (Doc. 8). Carson Group filed its Answer to the Amended Complaint on May 23, 2024, which it later Amended. (Doc. 11 and Doc. 24).

4. The Court entered a Final Progression Order on June 27, 2024 (Doc. 15) and entered its Final Progression Order (Amended) on May 1, 2025, setting the following discovery deadlines:

1

| Deadline | Event |
|---|---|
| 12/08/25 | Written discovery deadline |
| 12/22/25 | Deadline for filing motion to compel written discovery |
| 08/15/25 | Rebuttal witness expert reports |
| 01/15/26 | Deposition deadline (each party limited to 14 depositions) |
| 01/30/26 | Deadline for filing motions to exclude expert testimony under *Daubert* |

(Doc. 44).

5. On June 28, 2024, Defendant served its First Request for Production of Documents and First Interrogatories to Plaintiff. Numerous discovery requests sought production of Plaintiff's medical records and her communications with her medical providers regarding Defendant and the allegations, injuries, and damages Plaintiff identified in her Amended Complaint. More specifically:

    a. Interrogatory No. 2 asked Plaintiff to, "Identify all documents, electronically stored information, and tangible things – including, without limitation, all diaries, journals, calendars, logs, video and/or audio recordings, notebooks, notes, messages, chats, posts, emails, or other records – in your possession, custody, or control that evidence, contain, refer, or relate to facts that concern, support, or contradict your claims against Defendant."

    b. Interrogatory No. 3 asked Plaintiff to, "Describe each communication (i.e., name of person, contact information, date, manner of communication and substance) that you have had with any person – other than any attorney retained to represent your interests – ***including, without limitation, healthcare providers*** . . . regarding Defendant, the existence of this lawsuit or any of the allegations, events, occurrences, harm, injury, or claims in your Amended Complaint." (Emphasis added).

    c. Request No. 4 asked Plaintiff to produce, "All medical records pertaining to all claims and injuries for which you seek recovery."

    d. Request No. 12 sought, "If not otherwise provided, all documents setting forth evidence of any of the damage claims made by you in this case, including, but not limited to, medical expenses and other out-of-pocket expenses, lost wages and benefits, attorneys' fees, and emotional distress and punitive damages."

  e.  Request No. 16 sought, "All text messages, communications, chats, and correspondence between you and any one (other than your attorneys) which relates in any way to Carson, the existence of this lawsuit or any of the allegations, events, occurrences, harm, injury, or claims in your Amended Complaint."

  f.  Request No. 18 requested, "All documents, including but not limited to, books, emails, text messages, social media posts, records, notes, photographs, tapes, or recordings of any type, which refer, relate to, refute, or are relevant to any of the allegations, events, occurrences, harm, injury, or claims in your Amended Complaint."

  g.  Request No. 20 requested, "Any and all documents, including but not limited to, notes, diaries, logs, journals, recordings, or other records of any events or conversations, made by you, or anyone else, concerning any incident during the course of your employment which relates to, refers to, supports or contradicts any of the allegations, events, occurrences, harm, injury, or claims in your Amended Complaint."

  h.  Request No. 23 sought "All documents constituting or referring to complaints you made to anyone working for or representing Defendant during your employment that relates to, supports, or refutes any of the allegations, events, occurrences, harm, injury, or claims in your Amended Complaint."

  i.  Request No. 25 requested, "All documents concerning communications between you and any person or entity other than your lawyer concerning Carson, the existence of this lawsuit or any of the allegations, events, occurrences, harm, injury, or claims in your Amended Complaint."

  6.  Plaintiff (via her counsel) served her discovery responses to Defendant on September 3, 2024. Plaintiff did not provide a substantive answer to Interrogatory Nos. 2 and 3, instead directing Defendant to documents she was producing with her discovery responses, which she identified by the bates prefix "PL." Plaintiff's responses to the Requests for Production similarly directed Defendant to documents produced by Plaintiff and identified by the bates prefix "PL." The documents produced by Plaintiff included medical records which Plaintiff later represented she obtained from her medical providers via authorizations sent before her lawsuit was filed (but after she sent a demand and filed a Charge against Defendant).

7. Carson Group also sought to obtain these same records directly from Plaintiff's providers, who provided business records affidavits attesting that the records produced represented true, accurate and complete copies of Plaintiff's treatment records. After receipt, Carson Group affixed a unique bates prefix to those records reflecting the provider (*e.g.* "DR DOE") and reproduced them to Plaintiff.

8. The documents produced by the providers exposed post-demand/Charge efforts by Plaintiff to persuade three different medical providers to alter her medical records and include language in the substantive content of her medical records ahead of the filing of her lawsuit to align with the allegations advanced by Plaintiff in her Charge and later, Amended Complaint.

9. More concerning, there are significant and material differences between the records Carson Group received directly from one of the provider's offices and the records produced by Plaintiff. None of the alterations are apparent from the face of the documents (*i.e.,* they are not in "redline" or another readily identifiable way of tracking modifications). Because the changes were embedded in the content of the records (and not disclosed by Plaintiff in her discovery responses), the fact changes were made was only uncovered by Defendant through extreme diligence following a meticulous review of the medical records produced by both Plaintiff and her providers.

10. The materiality and significance of the alterations become apparent when Plaintiff's production is compared side-by-side to the documents received directly from the provider. The comparison reveals ***over 100 internal changes to the records, all of which were designed to amplify Plaintiff's substantive claims and emotional distress damages, and all of which were orchestrated by Plaintiff after retaining counsel to represent her in a lawsuit against Defendant and after sending a demand letter to Defendant and filing a Charge***.[1]

---

[1] The Protective Order (Doc. 16) precludes Defendant from including a description of the differences between the records produced by Plaintiff and the records obtained from her providers. Defendant therefore directs the Court to

4

11. Based on the number of changes, the materiality of changes, the targeted nature of the changes, and the relevant timeline of events, the alterations appear to be the work product of one or more persons who know, from experience and training, the type of changes to make for the purpose of inflating a claim for alleged disability claims and emotional distress damages and who has the technical expertise to make the changes in such a way that they are obscured until a side-by-side comparison of the records was made.

12. In her September 2024 production, Plaintiff did not produce the original records she received from these providers or disclose her numerous communications with her providers reflecting her instructions to alter her medical records. Plaintiff also failed to disclose that internal embedded changes had been made to her original medical records prior to their production. Plaintiff's efforts to spoliate evidence (*i.e.,* modify her medical records) would have been responsive, at a minimum, to Interrogatory Nos. 2 and 3 and Request Nos. 4, 12, 16, 18, 20, 23 and 25.

13. On January 17, 2025, Plaintiff identified Angela K. Lawson, Ph.D. ("Dr. Lawson"), as an expert witness. In preparing her report, Dr. Lawson, reviewed and relied on the altered medical records provided to her by Plaintiff, all of which are marked with a "PL" prefix. Dr. Lawson cited Plaintiff's medical records 45 times in her expert report. It is unknown whether (or to what extent) Dr. Lawson knew the records she relied upon in preparing her report had been altered.

14. To ascertain the source and scope of the altered medical records, Carson Group propounded its Second Request for Production of Documents on April 23, 2025, and its Third

---

Defendant's Motion for Sanctions and Memorandum of Law in Support thereof which include a side-by-side analysis of the changes and a summary of the differences by category to illustrate how the changes that were made were designed to buttress Plaintiff's substantive claims and emotional distress damages. Defendant is contemporaneously asking that the Memorandum of Law be filed with restricted access.

Request for Production of Documents on April 28, 2025, seeking metadata and documents relevant to the altered medical records. Supplemental subpoenas for records to Plaintiff's medical providers were issued by Defendant in May 2025 to obtain compete records to determine if alterations had been made to other records produced. *See* Doc. 45, 46, 49-52.

15. On May 28, 2025, Plaintiff served responses to Defendant's Second and Third Requests for Production of Documents. Because Plaintiff's production did not include documents regarding the modifications to her records, Defendant served a golden rule letter to Plaintiff on June 2, 2025.

16. On June 4, 2025, another one of Plaintiff's medical providers produced documents reflecting Plaintiff's efforts to modify her records. With proof in hand that Plaintiff's efforts to alter her medical records now extended to at least two providers, Defendant sent a second golden rule letter on June 6, 2025, proposing use of an independent third-party forensic examiner to collect and produce the natives and metadata of documents to ensure the integrity and authenticity of the evidence.

17. On June 9, 2025, counsel for the parties held a meet-and-confer. In this call, Plaintiff's counsel stated that Plaintiff denied making the changes herself. Plaintiff's counsel indicated they would provide documents in support of Plaintiff's position. Plaintiff's counsel offered no explanation for Plaintiff's failure to produce responsive and relevant communications between her providers wherein she instructed changes be made or her failure to identify her numerous alterations to her records in response to the initial discovery responses served in summer 2024. Plaintiff's counsel rejected Defendant's proposal that an independent forensic examiner be engaged to collect ESI from Plaintiff's electronic devices to verify who had made the changes to

the medical records, and to ascertain whether anyone else had assisted Plaintiff in her efforts to change the records.

18.     On June 20, 2025, one of Plaintiff's medical provider produced the native versions of her records to Defendant, which confirmed the medical provider's representation that she did not author the version of the records produced by Plaintiff to Defendant (and her expert, Dr. Lawson), and directly contradicted Plaintiff's representation that the documents she produced (*i.e.,* those marked with a "PL" bates label) were accurate copies of the records Plaintiff obtained directly from her providers. *See* Para. 6, *supra*.

19.     On June 23, 2025, Plaintiff made an additional document production. Plaintiff's production still did not include the original medical records she obtained from her providers. Furthermore, no documents were produced reflecting who made the over one hundred embedded (hidden) changes to Plaintiff's medical records found in the set she produced and provided to her expert witness who then relied on the falsified documents to prepare her expert report.

20.     On June 27, 2025, Defendant sent Plaintiff a third golden rule letter outlining the open discovery issues surrounding Plaintiff's modification of her medical records.

21.     Follow up email communications were sent by defense counsel to Plaintiff's counsel on June 11, 18, 23 and 25 and July 15, 2025 concerning issues raised in the golden rule letters. As of the filing of this motion, despite documents produced exposing Plaintiff's alterations to her medical records with three different providers and establishing that the altered version of the records Plaintiff produced are not found in the provider's records, neither Plaintiff nor her counsel have acknowledged that Plaintiff altered her medical records or committed spoliation of evidence after retaining counsel. Plaintiff's counsel has offered no explanation for Plaintiff's failure to disclose her intentional alterations to her medical records or her repeated failure to

produce key documents for over a year. Even with many key documents unaccounted for, Plaintiff's counsel continues to refuse a forensic examination of Plaintiff's electronic devices.

22. As of the date this motion is filed, the outstanding discovery requests pertaining to the altered medical records issue include:

   a. Plaintiff's responses to Interrogatory Nos. 2 and 3 and Request Nos. 4, 12, 16, 18, 20, 23 and 25;

   b. Plaintiff's responses to Defendant's Second and Third Requests for Production;

   c. Defendant's Request for Inspection, requesting Plaintiff provide her electronic devices to an independent forensic examiner for inspection and analysis;

   d. Defendant's request for Plaintiff's expert to produce her test data to defense counsel, including tests administered and Plaintiff's responses thereto;

   e. Defendant's notices of intent to issue subpoenas to Plaintiff's cell phone provider seeking Call Detail Records which will reflect Plaintiff's communications with her medical providers and other potential witnesses; and

   f. Plaintiff's production of her text messages, which would include communications with Plaintiff's medical providers, as requested in Request Nos. 15 and 16. Defendant has been requesting Plaintiff produce relevant text messages in golden rule correspondence since October 2024.

23. The serious issues implicated by the above issues will not be fully and satisfactorily resolved prior to the August 15th deadline for Defendant to provide its rebuttal expert witness report. Further, Plaintiff's deposition cannot be scheduled until after this issue is fully vetted. Given the number of anticipated depositions in this case, the parties' ability to complete discovery in a timely manner has been severely compromised by this issue.

24. Furthermore, contemporaneous to this motion, Defendant has filed a Motion for Sanctions and a separate (under seal) Memorandum of Law in Support thereof seeking sanctions against Plaintiff based on her pre-litigation instructions to at least three medical providers to alter the content of her medical records, her failure to disclose the alterations made by her and/or at her direction, her use of fraudulent medical records to advance her claims, and her willful efforts to

conceal her misconduct. Defendant's Motion for Sanctions asserts that a severe sanction is warranted and asserts that the most appropriate sanction is dismissal of the Amended Complaint with prejudice and an award of Defendant's costs and fees incurred in the defense of this action. The Court's ruling on Defendant's Motion for Sanctions will impact whether the case continues and, if so, what claims remain for adjudication.

25. "It is well-established that a trial court has the inherent power to stay proceedings to control its docket, to conserve judicial resources, and to ensure that each matter is handled with economy of time and effort for itself, for counsel, and for litigants." *MAK Dev. LLC v. City of Lincoln, Nebraska*, No. 4:24CV3069, 2024 WL 4434579, at *1 (D. Neb. Oct. 7, 2024) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Kansas City S. Ry. Co. v. U.S.*, 282 U.S. 760, 763-64 (1931); and *Buc-ee's Ltd. v. Bucks, Inc.*, 2018 WL 443320 at *3 (D. Neb. Jan. 16, 2018)). The decision to stay proceedings involves an "exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* (citing *Landis* at 254–255 and *Prism Techs, LLC v. U.S. Cellular Corp.*, 2015 WL 13215454, at *1 (D. Neb. Sept. 29, 2015)). The Court has "broad discretion and inherent power to stay discovery until preliminary questions that may dispose of a case are determined." *Id.* (quoting *Mendoza v. United States Immigration*, 2013 WL 12123539, at *2 (D. Neb. May 29, 2013)).

26. "In determining whether staying a case is appropriate, the court will consider factors such as the economy of judicial resources and balancing the potential prejudice, hardship, and inequity to the parties." *Id.* at *2 (quoting *Doe v. University of Nebraska*, 2020 WL 5057767 (D. Neb. Aug. 27, 2020)). As the movant, Carson Group bears the burden of demonstrating a good cause for the stay. *Id.* Carson Group "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work

damage to someone else." *Id.* (additional citation omitted). "Ultimately, the decision granting or denying a stay calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* (additional citation omitted).

27. Judicial economy dictates staying this case pending resolution of the many factual, legal, and ethical issues arising from Plaintiff's alteration, production, and use of altered medical records and failure to disclose the same, because any actions taken, or discovery conducted,[2] is potentially unnecessary or wasteful if the litigation is dismissed.

28. Likewise, Defendant will be prejudiced if it is forced to continue litigating issues Plaintiff may not present to the jury.

29. Further, Defendant is concerned about providing any further proprietary or sensitive information to Plaintiff given the actions to date and doing so could further prejudice Defendant.

30. This motion is made in good faith and not for purposes of vexation, harassment, or undue delay.

31. Defense counsel conferred with Plaintiff's counsel who did not consent to the stay.

WHEREFORE, Defendant Carson Group Holdings, LLC respectfully requests the Court stay proceedings pending the resolution of the factual, legal, and ethical issues implicated by Plaintiff's alteration, production, and use of altered medical records and her concealment of the same.

---

[2] Carson Group requests the stay, if granted, not apply to its discovery requests which address the factual, legal, and ethical issues highlighted in this Motion, as set forth in ¶ 22 of this Motion.

Respectfully submitted,

/s/ Daniel P. Johnson
Kerri S. Reisdorff, NE #23771
Daniel P. Johnson (*Admitted Pro Hac Vice*)
Heather R. Hamilton (*Admitted Pro Hac Vice*)
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
700 West 47th Street, Suite 500
Kansas City, MO 64112
Phone:  816.471.1301
Facsimile:  816.471.1303
Email:  kerri.reisdorff@ogletree.com
Email:  daniel.johnson@ogletree.com
Email:  heather.hamilton@ogletree.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of July, 2025, the foregoing was electronically filed with the Court Administrator and service was made through the electronic filing system to:

Thomas J. Freeman, #23639
Alexis S. Mullaney, #25908
Fiedler Law Firm, PLC
17330 Wright Street, Suite 102
Omaha, NE 68130
(402) 316-3060
(402) 513-6501
Email:  tom@employmentlawnebraska.com
Email:  alexis@employmentlawnebraska.com

**ATTORNEYS FOR PLAINTIFF**

/s/  Daniel P. Johnson
**ATTORNEY FOR DEFENDANT**

p